UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMANDO GONZALEZ, | No. C 09-03444 MHP |
| Plaintiff(s), | |
| v. | **MEMORANDUM & ORDER** |
| WELLS FARGO BANK, et al. | **Re: Plaintiff's Motion for a Preliminary Injunction** |
| Defendant(s). | |

    Plaintiff Armando Gonzalez ("Gonzalez") brings this action against defendants—Wells Fargo Bank, Wells Fargo Mortgage, First American Loanstar Trustee Services ("Loanstar"), Mortgage Electronic Registration Systems, Inc. ("MERS"), Central Coast One Stop Mortgage Group ("Central Coast"), GMH Financial, Inc. ("GMH"), Gary Michael Hoover ("Hoover"), and Enrique Orpeza ("Orpeza")—seeking to halt the trustee's sale of his residence and to recover damages from the individuals and entities that helped him take out the mortgage on the property. Now before the court is Gonzalez's motion for a preliminary injunction preventing all defendants from conducting a foreclosure sale on his home, recording any deeds or mortgages on the residence, and making any negative reports about Gonzalez to any credit reporting agencies. On September 3, 2009, this court conducted a hearing on the motion for a preliminary injunction. On September 23, 2009, this court conducted an additional hearing at which Gonzalez testified. Having considered the parties' arguments and for the reasons stated below, the court enters the following memorandum and order.

BACKGROUND

This action arises out of a dispute over the residence located at 1915 San Buenaventura Way, San Miguel, California ("the property"), which is currently owned by Gonzalez. In December 2006, Gonzalez was approached by Orpeza, a loan officer at Central Coast and GMH, to refinance the mortgage on the home. Docket No. 7 (Gonzalez Dec.) ¶ 3. Gonzalez applied for and received a loan for $335,000 from Central Coast. On March 26, 2007, Gonzalez signed a Note and a Deed of Trust. Gonzalez Dec., Exh. A (Note) & Exh. B (Deed of Trust). The Deed of Trust identifies Central Coast as the Lender and Loanstar as the Trustee. Deed of Trust at 1. Gonzalez asserts that at the time that he closed on his loan, he did not receive signed loan documents. Gonzalez Dec. ¶ 12. Gonzalez also asserts that he did not receive any financial disclosures from Central Coast explaining what the finance charges and interest rate on his loan would be. *Id.* ¶ 11. Wells Fargo has submitted a copy of a Federal Truth-In-Lending Disclosure Statement signed by Gonzalez and dated March 26, 2007. Docket No. (Dufner Dec.), Exh. B (Federal Truth-In-Lending Disclosure Statement).

On that same day, March 26, 2007, Central Coast transferred all of its rights as beneficiary to MERS. Gonzalez Dec., Exh. D (Corporation Assignment of Deed of Trust). Effective May 1, 2007, Central Coast also assigned its right to service the loan to Provident Funding Associates. Gonzalez Dec., Exh. F (Notice of Assignment, Sale, or Transfer of Servicing Rights).

In approximately January 2009, Gonzalez started to fall behind on his loan because his wife lost her job and because he was working as a roofer and "work slowed down." Gonzalez Dec. ¶ 7. In February 2009, Gonzalez had a Truth-In-Lending audit conducted on the mortgage. Gonzalez Dec. ¶ 8. The auditor informed him that, under the Truth-In-Lending Act (TILA), the Notice of Right to Cancel his loan, which he was provided by defendants on the day the loan closed, had not been properly completed. Specifically, the Notice did not include the date on which Gonzalez's right to rescind the loan expired. Gonzalez Dec., Exh. G (Notice of Right to Cancel). In support of this claim, Gonzalez has submitted a Notice to Cancel that has a blank, uncompleted space where the date of the cancellation deadline should appear. *Id.* Wells Fargo, however, has submitted two different copies of the Notice of Right to Cancel that are purportedly from the loan file and that are

2

1  both signed by Gonzalez and have March 29, 2007, written in as the date by which Gonazlez was
2  required to provide notice of his intent to cancel the loan. Dufner Dec., Exh. A (Notice of Right to
3  Cancel). On April 2, 2009, Gonzalez submitted written notice to Wells Fargo Bank of his intention
4  to rescind the mortgage. Docket No. 6 (Sandison Dec.), Exh A. Wells Fargo refused to comply.

5  On April 9, 2009, Loanstar recorded in San Luis Obispo County a Notice of Default on the
6  property. Docket No. 29 (Gregory Dec.), Exh. A (Notice of Default). A copy of the Notice of
7  Default was mailed to Gonzalez on April 15, 2009. *Id.* Gonzalez claims that he never received a
8  Notice of Default until his attorney sent him a copy on July 22, 2009. Gonzalez Dec. ¶ 10.

9  On May 7, 2009, an assignment of the beneficial interests under the Deed of Trust from
10 MERS to Wells Fargo Bank was recorded. Gregory Dec., Exh. B (Assignment of Deed of Trust).

11 On July 10, 2009, a Notice of Trustee's Sale was recorded by Loanstar, setting July 30, 2009,
12 as the date for a foreclosure sale. Gregory Dec., Exh. C (Notice of Trustee's Sale). The Notice of
13 Trustee's Sale was mailed to Gonzalez on July 10, 2009, *id.*, and posted on the front door of the
14 residence that same day, Gregory Dec., Exh. D (Declaration of Posting). It was also published in the
15 *Paso Robles Press* on July 10, 17 and 24, 2009. *Id.* Gonzalez claims that he never saw a Notice of
16 Trustee's Sale posted on the property. Gonzalez Dec. ¶ 22.

17 The sale was not held on the July 30, 2009, because Gonzalez obtained a temporary
18 restraining order from this court. Docket No. 21. As of the date of this order, Gonzalez's home has
19 not yet been sold at foreclosure.

20

21 LEGAL STANDARD

22 I.    Preliminary Injunction Standard

23 A preliminary injunction is a provisional remedy, the purpose of which is to preserve the
24 status quo and to prevent irreparable loss of rights prior to final disposition of the litigation. *Sierra*
25 *On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984). The Ninth Circuit
26 authorizes preliminary injunctive relief for "a party who demonstrates either (1) a combination of
27 probable success on the merits and the possibility of irreparable harm, or (2) that serious questions
28

3

are raised and the balance of hardships tips in its favor." *Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 874 (9th Cir. 2000). These are not separate tests, but rather "opposite ends of a single 'continuum in which the required showing of harm varies inversely with the required showing of meritoriousness.' " *Rodeo Collection, Ltd. v. West Seventh*, 812 F.2d 1215, 1217 (9th Cir. 1987) (quoting *San Diego Comm. Against Registration & the Draft v. Governing Board of Grossmont Union High Sch. Dist.*, 790 F.2d 1471, 1473 n. 3 (9th Cir. 1986)).

DISCUSSION

I.  Gonzalez's Motion to Strike defendants' supporting exhibits

As a preliminary matter, the court must address Gonzalez's motion to strike all of the material submitted by defendants in support of their opposition to Gonzalez's motion for a preliminary injunction. Gonzalez asserts that the challenged documents have not been properly authenticated and are inadmissible hearsay. Docket No. 31 (Gonzalez's Motion to Strike).

On a motion for a preliminary injunction, a "[t]rial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial." *Flynt Distributing Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) (citing 11 C. Wright & A. Miller, *Federal Practice and Procedure, Civil*, § 2949, at 471 (1973)); *see also Houdini Inc. v. Goody Baskets LLC*, 166 Fed. Appx. 946, at *1 (9th Cir. 2006) ("[T]he district court did not abuse its discretion in considering hearsay . . . because the rules of evidence do not strictly apply to preliminary injunction proceedings."). Given the evidentiary discretion granted to district courts entertaining a motion for a preliminary injunction, this court accepts the documents submitted by defendants. In particular, because Gonzalez does not suggest that any of the documents are anything other than what they purport to be, the court sees no reason to presume otherwise. Gonzalez's motion to exclude the documents is DENIED.

4

II.     Motion for Preliminary Injunction

    a.     Possibility of irreparable harm

The possible irreparable harm that Gonzalez would suffer if his home is sold at foreclosure is obviously high. Since real property is considered unique, foreclosure on one's property may constitute irreparable harm. *See Sundance Land Corp. v. Community First Fed. Sav. & Loan Ass'n*, 840 F.2d 653, 661-62 (9th Cir. 1988); *Mesde v. American Brokers Conduit*, No. C 09-02418 JF (RS), 2009 WL 1883706, at *2 (N.D. Cal. 2009) (Fogel, J.) (holding that foreclosure constitutes irreparable harm when the lender did not offer the borrower any alternatives to foreclosure).

    b.     Probability of success on the merits

Gonzalez has not shown a reasonable probability of success on the merits. Gonzalez presents three distinct arguments for why defendants should be legally enjoined from foreclosing on the property. First, he asserts that defendants violated the Truth-In-Lending Act (TILA), thereby providing Gonzalez with the right to rescind his loan and avoid foreclosure. Second, Gonzalez believes that neither Wells Fargo Bank nor Loanstar have standing to foreclose on his property. Finally, Gonzalez claims that the trustee sale was not properly noticed. The court addresses each argument in turn.

        1.     TILA violations

Gonzalez alleges that, at the time that he closed on his loan, defendants failed to properly provide him with (1) a statutorily-mandated notice of his right to rescind the loan and (2) disclosures regarding the finance charges and interest rate on his mortgage. Both of these deficiencies, Gonzalez argues, constitute violations of TILA that permit him to rescind his mortgage and avoid foreclosure.

Congress passed TILA in order to " 'avoid the uninformed use of credit.' " *Jackson v. Grant*, 890 F.2d 118, 120 (9th Cir. 1989) (quoting *Mourning v. Family Publ'ns Serv. Inc.*, 411 U.S. 356, 377 (1973)). In order to effectuate TILA's protections, the statute and its implementing regulations, known collectively as Regulation Z, have been "liberally construed in this circuit." *Id.* at 120. "Even technical or minor violations of the TILA impose liability on the creditor," *id.*

5

(quoting *Semar v. Platte Valley Fed. Sav. & Loan Ass'n*, 791 F.2d 699, 704 (9th Cir. 1986)), meaning that TILA and accompanying regulations must " 'be absolutely complied with and strictly enforced,' " *Semar*, 791 F.2d at 704 (quoting *Mars v. Spartanburg Chrysler Plymouth, Inc.*, 713 F.2d 65, 67 (4th Cir.1983)).

Relevant to the instant case, when an individual refinances a mortgage on his primary residence, TILA provides the borrower with the right to cancel that loan "until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later." 15 U.S.C. 1635(a).[1] Pursuant to Regulation Z, the lender must provide the borrower with notice of this right to rescind. 12 C.F.R. § 226.23(b)(1). Such notice "shall clearly and conspicuously disclose . . . [t]he date the rescission period expires." 12 C.F.R. § 226.23(b)(1)(v). If the lender fails to disclose to the borrower his right to rescind, the duration of the borrower's right to rescind extends for three years from the date the transaction was consummated. 12 C.F.R. § 226.23(a)(3). In the Ninth Circuit, even purely technical violations of TILA's disclosure provisions, including failure to provide a borrower with a copy of the notice that included the date the rescission period expires, extend the duration of the right to rescind for three years. *See Semar*, 791 F.2d at 703-05 (finding violation of 12 C.F.R. § 226.23(b)(1)(v) where lender failed to write the date the rescission period expired on the borrowers notice of right to rescind).

Here, the parties' submissions and testimony indicate there is a strong possibility that Gonzalez could establish that his lender violated 12 C.F.R. § 226.23(b)(1)(v). Although Gonzalez admitted to signing a copy of the Notice to Cancel that appropriately included the date the rescission period expired, it appears that Gonzalez was provided with a copy that left blank the space designated for indicating the date the rescission period expired. Gonzalez has provided the court with a Notice of Right to Cancel from his own files that does not include the date the rescission period expires. Gonzalez Dec., Exh. G (Notice of Right to Cancel). Regulation Z plainly provides

6

1 that the borrower must be provided with two copies of the notice of right to rescind that includes that
2 specific information.  12 C.F.R. § 226.23(b)(1)(v).

3       Gonzalez also identifies another way in which the lender may have violated the notice
4 provisions in TILA.  Gonzalez claims that defendants did not provide him with written disclosures
5 of the finance charges and the interest rate on his mortgage loan prior to the time his loan closed.  A
6 complete failure to provide a borrower with the disclosures also extends the period in which the
7 borrower could rescind the loan to three years.  *See* 12 C.F.R. § 226.23(a)(3).  As soon as a lender
8 does provide the disclosures to the borrower, however, the rescission period, at least to the extent it
9 was justified by the failure to disclose, ends three days later.  *Id.*; *see Hernandez v. Downey Savings*
10 *& Loan Ass'n*, No. 08cv2336-IEG (LSP), 2009 WL 704381, at *5-6 (S.D. Cal. March 17, 2009)
11 (holding that belated disclosure did not entitle borrower to three-year rescission period; rescission
12 period ended three days after disclosures were provided);.  A written and signed acknowledgment of
13 receipt by the borrower creates a rebuttable presumption that the borrower did receive the
14 disclosures.  *See* 15 U.S.C. § 1635(c).  A plaintiff may, however, rebut the presumption through
15 sworn testimony.  *See Bell v. Parkway Mortg., Inc.*, 309 B.R. 139, 157 (E.D. Pa. 2004)

16       Defendants have introduced a copy of the Truth-in-Lending-Act Disclosure that Gonzalez
17 admitted to having signed.   Gonzalez seeks to rebut the presumption created by that document with
18 sworn affidavit and live testimony that, although he signed the document, he was never provided
19 with a copy.  In contrast to Gonzalez's claim regarding the omission of the date his rescission period
20 ended, where Gonzalez submitted copies of the Notice of the Right to Cancel that lacked necessary
21 information, the evidence regarding whether Gonzalez was provided with these other disclosures is
22 conflicting and difficult for the court to parse at this stage of the litigation.  At the very least,
23 however, Gonzalez has a better than negligible chance of succeeding on the merits of his failure to
24 disclose claim.

25       Given that evidence supports the possibility that two TILA violations occurred, there is a
26 substantial probability that Gonzalez could establish that his right to rescind his mortgage has been
27 extended to three years.  Such a finding does not, however, automatically entitle Gonzalez to a
28

7

preliminary injunction precluding defendants from foreclosing on the property. Gonzalez has a very low likelihood of demonstrating that he is legally entitled to rescind the loan because Gonzalez has not shown any ability to tender the loan's unpaid principal to the lender. Section 226.23 of Regulation Z provides that once a lender, upon proper notice that a borrower intends to rescind the loan, returns to the borrower all property mandated by the regulations, the borrower "shall tender the money or property to the creditor or, where the latter would be impracticable or inequitable, tender its reasonable value." 12 C.F.R. § 226.23. "[A] trial judge ha[s] the discretion to condition rescission on tender by the borrower of the property he had received from the lender." *Ljepava v. M. L. S. C. Props., Inc.*, 511 F.2d 935, 944 (9th Cir. 1975) (citing *Palmer v. Wilson*, 502 F.2d 860 (9th Cir. 1974)); *see also Dinsmore-Thomas v. F.D.I.C.*, 139 F.3d 904 (9th Cir. 1998) (unpublished table decision); *Montoya v. Countrywide Bank, F.S.B.*, No. C09-00641 JW, 2009 WL 1813973, at *4 (N.D. Cal. June 25, 2009) (Ware, J.). In this Circuit, courts confronted with motions for preliminary injunctions have considered plaintiffs' ability to tender the proceeds of their loan as a factor, if not a dispositive factor, when analyzing the plaintiffs' probability of succeeding on the merits. *See, e.g.*, *Burgueno v. GMAC Bank*, No. cv-08-1642-PHX-ROS, 2009 WL 1507558, at*1-2 (D. Ariz. May 28, 2009); *Boles v. Merscorp, Inc.*, No. CV 08-1989 PSG (Ex), 2009 WL 650631, at *3 (C.D. Cal. Mar. 11, 2009); *cf. Avila v. Stearns Lending, Inc.*, No. CV 08-0419-AG(CTx), 2008 WL 1378231, at *2 (C.D. Cal. Apr. 7, 2008) (granting motion for preliminary injunction and refusing to consider plaintiff's ability to tender proceeds of loan).

"[W]hether a decree of rescission should be conditional depends upon 'the equities present in a particular case, as well as consideration of the legislative policy of full disclosure that underlies the Truth in Lending Act and the remedial-penal nature of the private enforcement provisions of the Act.'" *Yamamoto v. Bank of N.Y.*, 329 F.3d 1167, 1171 (9th Cir. 2003) (quoting *Palmer*, 502 F.2d at 862).

> As rescission under § 1635(b) is an on-going process consisting of a number of steps, there is no reason why a court that may alter the sequence of procedures after deciding that rescission is warranted, may not do so before deciding that rescission is warranted when it finds that, assuming grounds for rescission exist, rescission still could not be enforced because the borrower cannot comply with the borrower's rescission obligations no matter what. Such a decision lies within the court's equitable discretion, taking into consideration all the

8

circumstances including the nature of the violations and the borrower's ability to repay the proceeds. *If . . . it is clear from the evidence that the borrower lacks capacity to pay back what she has received (less interest, finance charges, etc.), the court does not lack discretion to do before trial what it could do after.*

*Id.* (emphasis added).

At the hearing, Gonzalez testified that he earns $20 per hour for his work as a subcontractor, and that recently he has worked 30-40 hours per week. He also testified that his wife works approximately 10 hours per week at a wage of $11 per hour, and that they have no appreciable savings or investments. Testimony was also elicited that the monthly payment on the loan, on which he is at least eight months delinquent, was approximately $2200. All the evidence in the record indicates that Gonzalez is not in a position to tender the unpaid principal on the loan in a timely manner. Therefore, the court is not convinced that Gonzalez could "pay back what he received." *Mesde*, 2009 WL 1883706, at *3 ("Even assuming that Plaintiffs could provide competent evidence [of a TILA violation], Plaintiffs do not allege that they are willing to repay the principal they borrowed."). Given this evidence, the court holds it would be appropriate to condition Gonzalez's right to rescind his loan on his ability to repay the unpaid principal on the mortgage. Because Gonzalez has shown no ability to do so, Gonzalez has a very low probability of succeeding on the merits of his TILA claim and rescinding his mortgage.

    2. <u>Wells Fargo Bank and Loanstar's standing to foreclose on the property</u>

Gonzalez also asserts that Wells Fargo and Loanstar do not have standing to foreclose on the property. Under California law, a "trustee, mortgagee or beneficiary or any of their authorized agents" may conduct a non-judicial foreclosure process. Cal. Civ. Code § 2924(a)(1). California Civil Code section 2924b(b)(4), defines a "person authorized to record the notice of default or the notice of sale" as "an agent for the mortgagee or beneficiary, an agent of the named trustee, any person designated in an executed substitution of trustee, or an agent of that substituted trustee." Cal. Civ. Code. § 2924b(b)(4). "California law does not require that the original note be in the possession of the party initiating non-judicial foreclosure." *San Diego Home Solutions, Inc. v. Recontrust Co.*, No. 08cv1970 L(AJB), 2008 WL 5209972 (S.D. Cal. Dec. 10, 2008); *see also Wood v. Aegis Wholesale Corp.*, No. 1:09-CV-536-AWI-GSA, 2009 WL 1948844, at *9 (E.D. Cal. July 6,

9

1 2009); *Putkkuri v. ReconTrust Co.*, No. 08cv1919 WQH (AJB), 2009 WL 32567, at *2 (S.D. Cal.

2 Jan. 5, 2009) ("Pursuant to section 2924(a)(1) of the California Civil Code, the trustee of a Deed of

3 Trust has the right to initiate the foreclosure process. Cal. Civ. Code § 2924(a).").

4 In this case, Loanstar recorded the Notice of Default on April 9, 2009. At that time, Loanstar

5 was the trustee of the loan, as indicated on the original Deed of Trust. Deed of Trust at 1. Loanstar

6 therefore had standing to initiate the non-judicial foreclosure. Accordingly, Gonzalez's claim that

7 Loanstar lacked standing has no probability of success. Loanstar recorded the Notice of Trustee's

8 Sale on July 10, 2009. By that date, Wells Fargo had become a beneficiary of the loan, meaning that

9 either Loanstar or Wells Fargo could have initiated the foreclosure sale of the property. Gregory

10 Dec., Exh. B (Assignment of Deed of Trust). Given the record in this case, there is no probability

11 that Gonzalez could establish that the entities that were responsible for the non-judicial foreclosure

12 on the property lacked standing to do so.

13         3. <u>Notice of trustee sale</u>

14 Gonzalez also claims that he did not receive the statutorily-required notice of his default or

15 the impending trustee's sale, and that the foreclosure is consequently invalid. Specifically, he

16 asserts the defendants did not comply with California Civil Code sections 2924b(b)(1) and

17 2924f(b)(1). Section 2924b(b)(1) requires, among other things, that a notice of default be sent to the

18 borrower within 10 business days of recording the notice with the county, Cal. Civ. Code §

19 292b(b)(1), while section 2924f(b)(1) requires that a notice of trustee's sale be posted on the

20 property at least 20 days before the date of the sale, Cal. Civ. Code § 2924f(b)(1). Failure to comply

21 with either provision would require this court to set aside the non-conforming portion of the

22 foreclosure proceedings and force defendants to provide Gonzalez with proper notice.

23 In his declaration, Gonzalez states that he does "not recall" ever receiving a Notice of

24 Default in April of 2009, and that he had "not seen" any copy of the Notice of Trustee's Sale ever

25 posted on his property. Gonzalez Dec. ¶¶ 10, 22. Defendants have submitted an affidavit from an

26 agent of Loanstar swearing that he sent, by certified mail, a copy of the Notice of Default on April

27 15, 2009, only six days after the recording of the Notice of Default. Gregory Dec., Exh. A. Thus,

28

10

1 contrary to Gonzalez's assertion, defendants did comply with California Civil Code section
2 2924b(b)(1).  Section 2924b(b)(1) mandates only that the entity authorized to record the notice of
3 default mail the notice of default, and does not require that the individual to whom the notice is
4 addressed actually receive the notice.

5       Defendants have also submitted convincing evidence that it provided Gonzalez with
6 sufficient notice of the impending trustee's sale.  Exhibit D attached to the Gregory Declaration is a
7 "Declaration of Posting - Notice of Trustee Sale."  The declarant, Sharalyn Pettitt, swore under
8 penalty of perjury, that she posted the Notice of Trustee's Sale on Gonzalez's front door at 1915
9 Buenaventura Way on July 10, 2009 at 12:00 PM, exactly 20 days prior to the July 20, 2009
10 scheduled sale.[2]  Given the record before the court, Gonzalez has no possibility of succeeding on his
11 claim that he was not provided proper notice of default or the trustee's sale.

12       Given the foregoing analysis, Gonzalez's probability of succeeding on any of his claims that
13 could potentially halt the foreclosure on the property is so low, that even though Gonzalez would
14 suffer irreparable harm, he has not met the standard for the granting of a preliminary injunction.

15       c.    <u>Serious questions and the balance of equities</u>

16       Although defendants have more to lose than simply delay in the sale of the property, as
17 Gonzalez contends, the balance of equities clearly favors Gonzalez, who stands to lose his residence
18 if the trustee's sale is not enjoined.  At the same time, there is a near-total absence of serious
19 questions regarding whether Gonzalez is entitled to the relief he seeks.  Accordingly, Gonzalez is
20 not entitled to relief under this formulation of the preliminary injunction standard.

22 <u>CONCLUSION</u>

23       For the reasons discussed above, plaintiff's motion for a preliminary injunction is DENIED.

25       IT IS SO ORDERED

27 Dated: October 29, 2009

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

11

**ENDNOTES**

1.  16 U.S.C. section 1635(a) provides in full:

> Except as otherwise provided in this section, in the case of any consumer credit transaction . . . in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.

2.  The declaration also includes two nearly-illegible photocopies of photographs showing two documents posted to the front door of a house.  Because of the poor quality of the photographs, it is impossible to determine if the house depicted is, in fact, 1915 Buenaventura Way or whether the documents provide notice of the sale.  The declaration, however, is more than sufficient to carry defendants' burden on this issue.